OTT, Acting Chief Judge,
dissenting.
I dissent, not because I think the police officer acted wisely and reasonably (which I do), but because the trial court, acting well within the bounds of its discretion, thought so. I would affirm the ruling of the trial court and add a “well done” for the officer. He does good work.
We hire intelligent police officers and train them to be observant, to look for the small tell-tale signs of illegal activity, such as furtive movements, guilt-ridden demean- or and odd behavior — clues the untrained *1387 observer would either not notice or would deem inconsequential. But when an officer’s honed instincts tell him something peculiar is going on, and he smells illegality in the very air, we forbid him from pursuing the matter unless, at that precise moment of merely “aroused suspicion,” he has probable cause to arrest the suspect.
True, we permit him to detain and interrogate the suspect, provided he has a “founded suspicion” that a criminal act has occurred, is in progress or is about to occur, but the only searching we permit is for the limited purpose of ascertaining whether the suspect is armed.
I sincerely wish that someone would explain to me what was wrong with what the officer did in this case. Under circumstances found to be sufficiently suspicious to justify stopping the boy, what in the world was objectionable about looking into the paper bag? After all, it was the suspect’s conduct with respect to that bag that aroused the officer’s interest in the first place. He had observed the same brown bag “drop” and “pick up” scenario before and found it to be the means of delivering marijuana. It isn’t as though the officer used his “founded suspicion” as a pretext for stopping the suspect and then pawed through the boy’s possessions on a fishing expedition. As a matter of fact, I would be much more apt to fault an officer, under identical circumstances, for not checking the contents of the bag. I am compelled to add, with no thought of suggesting that ends justify means, that the officer’s suspicions proved to be well warranted.
It seems to me that some of the new rules devised to protect or effectuate constitutional guaranties of freedom are unduly academic. I am by no means in the ranks of those who castigate the courts for “coddling criminals.” I am satisfied that no rule formulated by any appellate court in this land was ever intentionally designed to make it easier for criminals to evade their just deserts. The problem confronting the courts is that it is simply impossible to safeguard the liberty of law-abiding citizens and simultaneously deny protection to those accused but not yet finally convicted of crime. In truth, not until one is accused of illegal conduct do those constitutional guaranties become at all important.
But that is not to say that courts have infallible wisdom or perception. Sometimes their motives are laudable but their methods are unfortunate.
There is no such thing as absolute freedom in today’s complex society. No one has completely unfettered liberty. Every reasoning person expects to sacrifice a measure of his personal freedom, not only in order that his neighbor enjoy equal rights, but for his own benefit and protection. It is unrealistic to exclude that spirit of compromise from the rules governing our law enforcement agencies.
The key to that compromise lies in the use of the word “unreasonable.” Not every search or seizure is an invasion of privacy, only those that are unreasonable. What is reasonable is going to vary from case to case. In the instant case, I can find noting unreasonable in the actions of the police officer. More aptly, I am unable to say that the trial judge abused his discretion in ruling that he, supposedly the trier of fact, found nothing unreasonable in the officer’s conduct.
This would be a wonderful world if there were no crime, no need for police officers and no such thing as a search or seizure. But there is crime, increasingly, and we hire efficient police for our protection, it isn’t us against the police, but us against the criminals, and the police are but our soldiers in that war. Surely we know by now what happens when troops are committed to battle with their hands tied.
No one disputes that an honest person should not be required to suffer the embarrassment or even the inconvenience of an arbitrary search of his person or property. But if his behavior, though innocent, reasonably suggests illicit activity, and he is at all interested in preventing or curbing crime, he will compromise his personal freedom (or privacy) somewhat if his greater goal is to be attained. No innocent person fears or is outraged by courteous, reasona *1388 ble and justified interrogation or investigation by a police officer. Every intelligent person knows that the officer is simply doing, as efficiently as possible and as thoroughly as necessary, the job we hired him to do.
It is all very well to pursue pure freedom in ivory-tower meditation, and I most heartily subscribe to the proposition that individual freedom must be as pure as practicality permits, but let’s not lose sight of the limiting factors imposed by the real world.